**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hatson LOUIS, Defendant–Appellant.**

No. 90–3778.

United States Court of Appeals, Eleventh Circuit.

Aug. 10, 1992.

Armando Garcia, Tallahassee, Fla., for defendant-appellant.

Mike Simpson, Asst. U.S. Atty., N.D. Fla., Tallahassee, Fla., for plaintiff-appellee.

Before EDMONDSON, Circuit Judge, RONEY *, and GIBSON **, Senior Circuit Judges.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

EDMONDSON, Circuit Judge:

Defendant Hatson Louis pled guilty to possession with intent to distribute five grams or more of cocaine base and was sentenced to 260 months imprisonment with five years supervised release. He raises three sentencing issues on appeal: the quantity of drugs used to determine his offense level, the sentence enhancement for firearm possession, and the sentence enhancement for obstruction of justice. We AFFIRM.

*Facts*

In late 1987, Tallahassee, Florida police used a confidential informant to make a controlled buy of crack cocaine from a group of Haitians. The police then obtained a search warrant for the house where the buy took place.

Approximately one hour before the search was scheduled to occur, police were called to a location one block north of the house by citizens complaining about open crack sales on the street. When police arrived, they saw defendant Hatson Louis, a Haitian from Fort Lauderdale, and others, seemingly involved in a drug transaction. The group scattered; Louis ran in the direction of the house that was to be searched. He was stopped by police and arrested about 180 feet from and in sight of the house. During the arrest, a man and woman came from the yard of the house and, over police objection, tried to talk to Louis in French or Haitian Creole. At the same time, Louis tried to take off his jacket and give it to the couple; but police prevented him from doing so. Police found ten 1.5–gram light-colored chunks of 40% benzocaine crack cocaine in the jacket and $1,410 in small bills in Louis' pants. Officers testified the people in the yard asked what would happen to Louis and the money he was carrying.

About an hour after Louis' arrest, the house was searched. The only furnishings

** Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

were a cot, an inexpensive dinette set and chairs, and a kerosene heater. Police testified that the house looked like its occupants had left in a hurry. Some of the dinette chairs had been overturned and there was Chinese take-out food—still warm—in containers on the table.

The house was set up off the ground on pilings. When police searched under the building, they found three stashes of crack and two handguns, a .38 revolver and a 9mm automatic. A fourth crack stash was found in a concrete block in the yard. The drugs found around the house weighed a total of 325.3 grams. All of the crack was of the 40% benzocaine mixture;[1] some of it in chunks identical in appearance to that found in Louis' jacket and the rest varying only slightly in color and size.

Police also searched a 1977 Datsun parked in the driveway and a mini-van parked across the street.[2] The car contained $5,023 in small bills, a cooking pot and razor blades showing benzocaine residue, a loose license plate for another car registered to Louis at an apartment complex in Fort Lauderdale and an automobile insurance revocation notice sent to Louis at the same Fort Lauderdale address. The Datsun itself was not titled in Louis' name. The license plate attached to the car was registered to another person at Louis' Fort Lauderdale apartment complex.

In the mini-van, police discovered a .38 revolver, a box of ammunition, $2,937 in small bills, and 369.1 grams of crack made of a 40% procaine mixture.[3] The mini-van was registered to a Fort Lauderdale address.

Quantities of a laboratory-type zip-lock bag with white labelling areas were found in the mini-van, Datsun, and house. Most of the crack was stored in this kind of bag.

Louis made several inconsistent post-arrest statements. First, he said he did not know the people in the yard or anything about them. Then he said he did know them. And later he said he was in Tallahassee to visit "a guy," but he did not know the guy's name or address or how to get to his house.

In January 1988, Louis was indicted for knowingly and intentionally possessing with intent to distribute and conspiring with others to possess with intent to distribute fifty grams or more of cocaine base (crack). He ultimately entered a plea agreement waiving the original indictment and pleading guilty to a one-count information charging possession with intent to distribute five grams or more of cocaine base. The sentencing court held Louis responsible not only for the 15 grams of crack found in his jacket, but also for the 694.4 grams found in the house and mini-van. In addition, the court enhanced Louis' sentence for the firearms and for obstruction of justice.

### Quantity of Drugs

Louis claims he should have been held accountable only for the 15 grams of crack found in his jacket and not the additional crack found in the mini-van and around the house. His argument fails because the sentencing court must consider not only Louis' individual conduct, but also uncharged acts for which he would otherwise be accountable that occurred during his offense of conviction. *See* U.S.S.G. § 1B1.3(a)(1).

 "[W]hether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably fore-

---

1. This mix is unusual in the Tallahassee area. Defense counsel admitted at the sentencing hearing that "[t]here is something unique about the benzocaine. I'm going to somewhat concede that point." R2:33.

2. Earlier, while the house was under surveillance, the mini-van had been parked in the driveway.

3. Like benzocaine, procaine is an over-the-counter anesthetic sometimes used as a cutting agent for crack cocaine.

seeable by the defendant." U.S.S.G. § 1B1.3, comment. (n.1). In a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in .determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction. *See United States v. Alston*, 895 F.2d 1362, 1371 (11th Cir.1990) (citing cases from six other circuits that agree such accumulation is possible in context of drug quantity); *see also United States v. Copeland*, 902 F.2d 1046 (2d Cir.1990) (although only three vials involved in defendant's attempt to distribute cocaine and crack, sentencing court properly found defendant responsible for 63 vials recovered during arrests of codefendants for whom defendant had served as broker; defendant's own possession of larger amount or conspiracy charges unnecessary).

■ Louis contends that there was no conclusive evidence of a common scheme or plan linking him to the drugs in the mini-van and around the house. But district courts are required to make factual determinations at sentencing only by a preponderance of the evidence, *United States v. Mieres–Borges*, 919 F.2d 652, 662 (11th Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1633, 113 L.Ed.2d 728 (1991), and we think the record amply supports the district court's finding that Louis was involved in a drug distribution scheme encompassing the sale of all the drugs seized in and around the house as well as the drugs found on Louis.

That Louis was involved with other conspirators was supported by his flight toward the house; his conversation with the couple there and his efforts to give them the drugs in his jacket; the couple's questions about the drug proceeds; the uniqueness of the drugs found in Louis' jacket, around the house and in the mini-van; and the presence of his license tag and papers in the car along with additional drug proceeds, drug paraphernalia and drug residue. The conspiratorial link is also sustained by the unusual laboratory bags, firearms and large quantities of small bills (characteristic of street drug sales) found in several different locations on the scene.

■ Unlike Louis, we do not view this evidence as merely coincidental. Furthermore, the district court's finding must be accepted unless clearly erroneous. *United States v. Wilson*, 884 F.2d 1355, 1357 (11th Cir.1989). We see no clear error in the inference that a scheme to distribute drugs existed and included Hatson Louis. We therefore affirm his accountability and sentencing based on the total quantity of drugs found on his person, around the house, and in the mini-van.

*Firearm Possession*

■ The district court decided the conspiracy in this case encompassed not only all of the drugs on the scene, but also the firearms found in the mini-van and the house. The court attributed the firearm possession to Louis as a member of the conspiracy, for whom firearm possession was at least reasonably foreseeable, if not within his actual knowledge. *See United States v. Martinez*, 924 F.2d 209, 210 and n. 1 (11th Cir.), *cert. denied sub nom., Duarte v. United States,* — U.S. ——, 112 S.Ct. 203, 116 L.Ed.2d 163 (1991). These findings are not clearly erroneous. Pursuant to U.S.S.G. § 2D1.1(b)(1), Louis' sentence was increased by two levels.

Louis now argues that even if a conspiracy existed and others in the conspiracy possessed firearms, *United States v. Otero*, 890 F.2d 366 (11th Cir.1989) (per curiam), precludes his sentence enhancement for firearms in this case. He specifically points to the *Otero* opinion's language about the actual possessor of the firearm being charged as a co-conspirator for application of Sentencing Guideline § 2D1.1(b)(1). But *Otero* involved identifiable co-conspirators; because their identity was known, they could be charged with conspiratorial activities. "Given *Otero*'s facts, *Otero*s holding remains good law in

this circuit; but the rules of co-conspirator liability ... do not require that the firearm possessor be a *charged* co-conspirator when that co-conspirator dies or is otherwise unavailable for indictment." *United States v. Nino*, 967 F.2d 1508 (11th Cir. 1992). Louis' fellow conspirators were never identified and therefore were never available for indictment. So, *Otero* does not control the application of section 2D1.1(b)(1); and the sentence enhancement for firearm possession is affirmed.

### Obstruction of Justice

 The sentencing court provided three justifications for an obstruction of justice sentence enhancement: (1) Louis' flight from police when they approached him; (2) his attempt to dispose of evidence (the crack in his jacket) during the course of his arrest; and (3) his false statements to police at the time of his arrest. We affirm the two-level enhancement but rely only on the second justification, Louis' attempt to dispose of evidence during his arrest. *See also United States v. Bonds*, 933 F.2d 152, 154 (2d Cir.1991) (upholding two-level enhancement where only one of two obstruction enhancement justifications was valid).

Under the Advisory Committee notes to the 1989 Sentencing Guidelines (in effect at the time of Louis' August 1990 sentencing), an attempt to dispose of material evidence was considered to be an obstruction of justice, without restriction as to when the attempt took place. U.S.S.G. 3C1.1, comment. (n.1(a)) (Nov. 1989). Likewise, this circuit had determined that an attempt to destroy or conceal evidence just before arrest constituted obstruction of justice. *See United States v. Cain*, 881 F.2d 980, 982 (11th Cir.1989) (defendant postal employee threw away stolen government checks as authorities approached); *see also United States v. Galvan–Garcia*, 872 F.2d 638, 641 (5th Cir.1989) (defendant jettisoned marijuana with authorities in pursuit);

*United States v. Franco–Torres*, 869 F.2d 797, 800–01 (5th Cir.1989) (defendant shot at federal agent, then threw away gun during chase).

Effective November 1990, the commentary to section 3C1.1 was amended to explain that

> if such conduct occurs contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.]

U.S.S.G. § 3C1.1, comment. (n.3(d)). Had this court not previously addressed the ramifications of Louis' attempt to dispose of his jacket and the drugs therein before Louis was sentenced, we would be inclined to heed this amended commentary and reverse the enhancement on this ground. Having previously decided this issue as a matter of law, however, we decline to be bound by guideline *commentary* changes unless or until Congress amends the guideline itself to reflect the change. *See United States v. Stinson*, 957 F.2d 813, 815 (11th Cir.1992). So Louis is unable to take advantage of this particular commentary change, and his enhancement for obstruction of justice on the grounds of attempting to destroy evidence contemporaneously with his arrest is affirmed.[4]

---

4. In contrast, at the time of Louis' sentencing in August 1990, neither the Guidelines nor this court had addressed whether Louis' flight and false statements upon arrest justified an en-

hancement for obstruction. But effective No-
vember 1990, modifications to Guidelines com-
mentary clarified the effect of both kinds of
conduct. *See* U.S.S.G. § 3C1.1 comment. (n.
4(d)) (mere flight from arrest insufficient to
justify obstruction enhancement); U.S.S.G.
§ 3C1.1 comment. (n. 4(b)) (making false state-
ments, not under oath, to law enforcement offi-
cers insufficient to justify obstruction enhance-
ment unless statements are materially false and
significantly obstruct or impede official investi-
gation or prosecution). In the absence of bind-
ing circuit precedent or guideline direction ef-
fective at the time of Louis' sentencing, we
would likely follow the new commentary in our
decision today. *See United States v. Burton,* 933
F.2d 916, 917 (11th Cir.1991) (reviewing new
commentary on flight despite defendant's sen-
tencing before effective date of commentary),
*cf. United States v. Stinson,* 957 F.2d 813, 815
(11th Cir.1992).

Louis' run appears to have been instinctive, or
"mere flight." And although Louis gave confus-
ing statements to police, we doubt his com-
ments were material to the investigation. *See
also United States v. Urbanek,* 930 F.2d 1512,
1514–15 (10th Cir.1991) (adjustment inappropri-
ate where false statements which investigating
officers knew to be false did not impede or
obstruct investigation); *United States v. Fiala,*
929 F.2d 285, 289–90 (7th Cir.1991) (defendant's
claim that he did not have anything illegal in his
car neither material nor obstructive of investi-
gation); *United States v. Howard,* 923 F.2d 1500,
1504 (11th Cir.1991) (defendant's failure to re-
veal prior drug transactions to probation officer
which he had already disclosed to DEA agents
not material). Because Louis' obstruction up-
grade may be upheld on the basis of the at-
tempted destruction of evidence, we need not
decide the validity of these other grounds.