**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marvin GREEN, Anthony Fowler, Clarence Wheeler, Jr., a/k/a "C–Dog", Frank Wheeler, James A. Wheeler, a/k/a "Pee–Wee", Clarence Wheeler, Sr., a/k/a "Pops", Frank Sims, Brian Carson, Defendants–Appellants.**

No. 92–2416.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1994.

Joel T. Remland, Asst. Federal Public Defender, Orlando, FL, for Green.

James J. Dowdy, Winter Springs, FL, for Fowler.

Scott A. Farr, Winter Park, FL, for C. Wheeler, Jr.

Kenneth J. Cotter, Winter Park, FL, for F. Wheeler.

James C. Weart, Orlando, FL, for J. Wheeler.

Steven L. Laurence, Altamonte Springs, FL, for C. Wheeler, Sr.

John L. Woodward, III, Orlando, Fl, for Sims.

Ronald A. Findell, Casselberry, Fl, for Carson.

Paul G. Bryon, Asst. U.S. Atty., Orlando, FL, Cynthia R. Hawkins, Tamra Phipps, Asst. U.S. Attys., Tampa, FL, for U.S.

Before HATCHETT and BLACK, Circuit Judges, and YOUNG*, Senior District Judge.

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida; sitting by designation.

HATCHETT, Circuit Judge:

In this large scale cocaine trafficking case, we affirm the convictions and the sentences.

## FACTS

After receiving information from the City of Orlando Police Department, agents with the Metropolitan Bureau of Investigation of Orlando, Florida (MBI) began investigating appellants Marvin Green, Clarence Wheeler, Sr., Clarence Wheeler, Jr., James Wheeler, Frank Wheeler, Frank Sims, Brian Carson, and Anthony Fowler's involvement in a large scale crack cocaine distribution network. Initially, the MBI attempted to conduct surveillance of a residence located at 907 West Long Street. These attempts failed because the suspects immediately recognized and accosted the agents.

The agents applied for and were granted authority to use a pin register and a trap and trace device for the telephone number assigned to 907 West Long Street. Through use of the pin register and trap and trace device, the agents learned that many telephone calls were being made between 907 West Long Street, 907 West Anderson Street, and 1212 West 22nd Street. The agents also determined that a number of calls were being made between 907 West Long Street and a business known as "Tap's Pool Room," which Frank Wheeler owned. Eventually, communications between 907 West Long Street and 1212 West 22nd Street ceased, and heavy communications began between 907 West Long Street and 510 Daniels Street, the residence of Brian Carson.

On July 10, 1991, a state court granted MBI agents authority to intercept oral communications involving the telephone assigned to 907 West Long Street. The MBI also obtained a pin register and a trap and trace for 907 West Anderson Street and for a cellular telephone number that had been identified during a previous pin register and trap and trace period.

The wiretap produced conversations confirming that a large scale cocaine trafficking operation was in effect, and that several of the appellants and customers referred to the 907 West Long Street address as "the shop."

Surveillance revealed that the cocaine trafficking operation worked in the following manner: a customer would go to 907 West Long Street and order the amount of cocaine to be purchased and the type, "hard" (crack) or "soft" (cocaine hydrochloride). After receiving payment for the cocaine, one of the appellants would make a telephone call from "the shop" to 510 Daniels Street or to a cellular telephone, and the order would be conveyed to the delivery person. The amount of cocaine ordered was referred to in a code that involved the use of numbers. Either Brian Carson or Frank Sims, the delivery persons, would then meet the customer at a prearranged location and deliver the cocaine. The actual transfer of the cocaine from the delivery person to the customer involved a quick transaction because the purchase price had been paid in advance.

## PROCEDURAL HISTORY

A federal grand jury indicted all of the appellants, charging in Count I that they conspired to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846. The grand jury also charged Frank Sims and Brian Carson (Count II) with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and Clarence Wheeler, Sr. (Count III) with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (c).

A jury returned verdicts of guilty as to all appellants; however, the district court granted the government's motion to vacate Clarence Wheeler, Sr.'s conviction as to Count I of the indictment. The district court sentenced Clarence Wheeler, Sr., Frank Wheeler, Brian Carson and Frank Sims each to terms of life imprisonment; Clarence Wheeler, Jr., and Marvin Green each to terms of thirty years imprisonment; James Wheeler to thirty years, ten months imprisonment; and Anthony Fowler to eleven years imprisonment with each sentence to be followed with five years of supervised release.

## CONTENTIONS OF THE PARTIES

Appellants Clarence Wheeler, Sr., Clarence Wheeler, Jr., James Wheeler, Frank

Wheeler, Frank Sims, and Brian Carson contend that the district court erred in denying their motions to suppress evidence because the affidavits and applications for the initial wiretap order failed to demonstrate probable cause. According to the appellants, the affidavit did not set forth any information upon which the magistrate judge could have determined that the unidentified sources of information cited were reliable or credible; the information provided from unidentified sources was only corroborated through innocent details; and the affidavit erroneously included information about the financial holdings of another Clarence Wheeler who was not connected to the investigation.

Appellants, Clarence Wheeler, Sr., Clarence Wheeler, Jr., James Wheeler, Frank Wheeler, Frank Sims, Brian Carson, and Marvin Green, contend that the district court erred in admitting into evidence tapes and transcripts of intercepted oral communications without authentication. They argue that the government never attempted to introduce testimony from persons familiar with the appellants' voices, and no one testified as to the accuracy of the transcripts.

Appellants, Clarence Wheeler, Sr., Clarence Wheeler, Jr., James Wheeler, Frank Wheeler, Frank Sims, Brian Carson, and Anthony Fowler, contend that the government failed to present sufficient evidence to support their convictions.

James Wheeler contends that the district court erred in admitting similar act evidence against him regarding a prior arrest for possession of cocaine.

Appellants, Clarence Wheeler, Sr., Clarence Wheeler, Jr., James Wheeler, Frank Wheeler, Frank Sims, and Brian Carson, contend that the district court improperly calculated their offense levels.

## ISSUES

These contentions present the following issues: (1) whether the district court properly denied the appellants' motions to suppress evidence; (2) whether the district court properly admitted into evidence tapes and transcripts of intercepted oral communications; (3) whether the government presented sufficient evidence to support each of the appellants' convictions; (4) whether the district court properly admitted similar act evidence against James Wheeler; and (5) whether the district court properly calculated the appellants' offense levels pursuant to the Sentencing Guidelines.

## DISCUSSION

### Motion to Suppress

The appellants contend that the district court erred in denying their motions to suppress all evidence obtained as a result of the wiretap orders. They challenge the affidavit in support of the wire tap, arguing that the affidavit in support of the pin register and trap and trace order did not contain a full and complete statement of the facts necessary to establish probable cause. Probable cause is lacking, urge appellants, because the law enforcement officers' statements were based on assumptions, conclusions, and assertions that the facts did not support. They also argue that the affidavit did not establish the reliability and trustworthiness of the confidential informants; that the information contained in the affidavit was stale in that it did not allege any present facts; and that the affidavit misrepresented the facts regarding the financial status of the alleged leader of the conspiracy, Clarence Wheeler, Sr.

In this case, Florida law governs whether the state law enforcement officer's affidavit established probable cause for the issuance of the wire intercept. *United States v. Carrazana*, 921 F.2d 1557, 1562–63 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 191, 116 L.Ed.2d 152 —— U.S. ——, 112 S.Ct. 269, 116 L.Ed.2d 221 (1991). In Florida, the issuance of an order authorizing the interception of wire or oral communications must be predicated upon a judicial finding of "probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in s. 934.07." Fla.Stat.Ann. § 934.09(3)(a) (West Supp. 1994). *Cf.* 18 U.S.C. § 2518(3)(a) (1988). Probable cause is based upon the "totality of the circumstances," and this court reviews the decision to ensure that the issuing court had a substantial basis for concluding that

probable cause existed. *Carrazana,* 921 F.2d at 1563.

■ An informant's credibility is determined based upon the totality of the circumstances, including the traditional review of the basis of his knowledge and reliability. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Carrazana,* 921 F.2d at 1564. The *Gates* standard only requires that "major portions" of the informant's statements be verified. 462 U.S. at 246, 103 S.Ct. at 2336.

■ In this case, the district court properly determined that the state court judge had probable cause to authorize the interception of wire and oral communications. The affidavit in support of the intercept order was based on statements or debriefings of approximately thirty persons, approximately fifteen of their own attempted undercover purchases of cocaine at the location, and statements of confidential informants. The affidavit included statements from two confidential informants who gave substantially the same account as to the procedures used in distributing the cocaine as the Orlando Police Department had conveyed to MBI. Both informants identified one of the delivery cars as a Ford Escort. Confidential source number one also identified a red Nissan 300 ZX with gold rims as a vehicle involved in the distribution, and confidential source number two identified a two-tone brown vehicle as a delivery vehicle. Case agents were able to corroborate part of the confidential sources' information when the officers saw the Ford Escort during surveillance of the 1212 West 22nd Street address. The officers also observed the blue Ford Escort bearing a Florida tag that an officer had observed on a two-tone brown vehicle earlier that day. Hence, the state court and the district court could properly rely upon the informants' information. The appellants' assertion that officers only corroborated "innocent details" is without merit.

■ The appellants also contend that the affidavit did not establish probable cause because it contained stale information. The government "must reveal facts that make it likely that the items being sought are in that place when the warrant issues" to satisfy the probable cause standard. *United States v. Harris,* 20 F.3d 445, 450 (11th Cir.1994) (quoting *United States v. Domme,* 753 F.2d 950, 953 (11th Cir.1985)). Information must be timely for probable cause to exist, for probable cause must exist at the time the magistrate judge issues the search warrant. *Harris,* 20 F.3d at 450. Stale information is not fatal where the government's affidavit "updates, substantiates, or corroborates the stale material." *Harris,* 20 F.3d at 450. In this case, the appellants argue that the affidavit was stale because it contained information from the unidentified sources for an unspecified time. This argument fails because the affidavit states that confidential source number two had made purchases of cocaine from the duplex off Long Street over the past one and one half years, the last occurring the first week of June, 1991. The information from confidential informant number two regarding the continued sale of cocaine at the duplex serves as an update of the information obtained from the Orlando Police Department. Accordingly, the information in the affidavit was not stale.

The appellants further argue that the affidavit in support of the intercept order contained improper financial data regarding Clarence Wheeler, Sr., and that this incorrect information led the judge to issue the order. The district court specifically excluded the financial data portion of the affidavit when making its determination as to the suppression motions.

■ This court reviews the district court's factual findings under the clearly erroneous standard. *Carrazana,* 921 F.2d at 1564. An application for an order authorizing the interception of wire communications must also include "[a] full and complete statement as to whether or not other investigative procedures had been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Fla.Stat.Ann. § 934.09(1)(c) (West Supp. 1994); 18 U.S.C. § 2518(1)(c) (1988). The district court found that "the affidavit and application contain a sufficient showing that normal investigative procedures had been tried and failed or reasonably appeared unlikely to succeed. The agents utilized a number of investigative procedures prior to the

wiretap including confidential informants, physical surveillance, and subpoenas. However, these procedures achieved limited success." The district court did not err in concluding that the issuance of the order authorizing the wiretap was proper. The affidavit established that the procedure used to distribute the cocaine made it nearly impossible to determine the time and location of individual drug deliveries without knowing the content of the telephone calls. Moreover, the appellants' countersurveillance measures through use of sentries, lookouts riding on bicycles whenever police officers attempted to surveil the area, made other investigative procedures unlikely to succeed or too dangerous.

### Admission of Tapes and Transcripts

■ The appellants also argue that the district court erred in admitting the tapes and transcripts of tapes from the intercepted oral communications because the government did not properly authenticate the tapes and transcripts. This court reviews a district court's determination of authenticity for an abuse of discretion, and that determination will "not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *United States v. Munoz,* 16 F.3d 1116, 1120–21 (11th Cir.1994) (quoting *United States v. Caldwell,* 776 F.2d 989, 1001 (11th Cir.1985)). A party may authenticate documents through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with circumstances." Fed. R.Evid. 901(b)(4).

■ In this case, the government proffered audio tapes and transcripts of the appellants' conversations concerning drug transactions. The appellants argue that the court should not have admitted the transcripts of the tape recordings because none of the persons who prepared the transcript testified to the accuracy of that transcript. It is not a necessary predicate for admission of transcripts of tape recordings that each officer who prepared the transcript testify to its accuracy. *United States v. Hogan,* 986 F.2d 1364, 1375 (11th Cir.1993). The district court properly admitted the tapes and transcripts. The government established the identity of the persons speaking through var-

ious means, including self-identification of each appellant on at least one occasion during the intercepted telephone conversations, identification through nicknames, surveillance, telephone subscriber information, and the monitoring agents' use of working copies of the known voice samples to become familiar with each appellant's voice. Although the monitoring agents became familiar with the appellants' voices after conversations were intercepted, that fact does not preclude their admissibility. *United States v. Biggins,* 551 F.2d 64, 68 (5th Cir.1977).

### Sufficiency of the Evidence

■ In challenges to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the government and considers whether a reasonable jury could find that the evidence proves each defendant's guilt beyond a reasonable doubt. *United States v. Carrazana,* 921 F.2d 1557, 1566 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 191, 116 L.Ed.2d 152, — U.S. —, 112 S.Ct. 269, 116 L.Ed.2d 221 (1991). In order to sustain the appellants' conspiracy to possess with intent to distribute convictions, the evidence must establish beyond a reasonable doubt that a conspiracy existed between two or more persons, that the accused knew of the conspiracy, and with this knowledge the accused voluntarily became a part of the conspiracy. *United States v. Van Hemelryck,* 945 F.2d 1493 (11th Cir.1991). Proof may be established through circumstantial evidence or from inferences drawn from the conduct of an individual or confederates. *Carrazana,* 921 F.2d at 1566. The appellants assert that the government failed to present direct evidence linking them to a conspiracy. According to the appellants, the only incriminating evidence against them were the tapes and transcripts that were alleged to be their voices. The appellants maintain that the government never properly identified their voices, and therefore, the government failed to present sufficient evidence.

■ As stated above, the district court properly admitted the tape recordings and their transcripts. In addition to the tape recorded conversations regarding drug transactions, the government presented the following testimony at trial: that Orlando police

officers observed Clarence Wheeler, Sr. on the porch of 907 West Anderson Street where he could supervise 907 West Long Street; that Clarence Wheeler, Sr. warned his coconspirators at 907 West Long Street when the police were in the area after his traffic stop; and that Clarence Wheeler, Sr. paid for cellular telephones and pagers used during the conspiracy. Cooperating coconspirator Anthony Smith testified that Clarence Wheeler, Jr. and James Wheeler both served as lookouts for the organization; that Frank Wheeler was the person who directed him to 907 West Long Street to purchase cocaine; that Anthony Fowler was present at 907 West Long Street to meet customers who wanted to purchase cocaine and to act as a lookout; and that Frank Sims and Brian Carson continuously delivered cocaine on behalf of the organization. The government presented testimony from police officers and Smith establishing that Sims continuously delivered cocaine on behalf of the organization. Also, drug ledgers were seized from Brian Carson's vehicle and residence during a search, and Frank Sims was inside the "stash house" at the time of the search. MBI agents identified Clarence Wheeler, Jr. as conducting countersurveillance during the conspiracy. The police officers' search of Frank Wheeler's residence yielded approximately $170,000 in cash as well as drug ledgers. After viewing this evidence in a light most favorable to the government, we hold that the evidence was sufficient to a allow a reasonable fact finder to conclude that the appellants were guilty beyond a reasonable doubt.

### Similar Acts

■ A trial court is given broad discretion in deciding the admissibility of extrinsic evidence under the Federal Rules of evidence and its decision will not be reversed absent an abuse of discretion. *United States v. Jones,* 913 F.2d 1552, 1566 (11th Cir.1990); *United States v. Perez–Garcia,* 904 F.2d 1534, 1533 (11th Cir.1990).

James Wheeler contends that the district court improperly admitted evidence of a prior arrest in 1987 for possession of a distributable quantity of cocaine base. The district court allowed the government to introduce evidence of James's prior arrest for possession of a distributable quantity of cocaine base, the same drug involved in the instant conspiracy. James argues that the trial court erred in admitting evidence of his prior arrest because the government introduced the arrest to establish his propensity to commit a drug related crime. The government argues that the trial court properly admitted the similar act evidence to establish his intent.

■ Evidence of past wrongs is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R.Evid. 404(b). Intent was a material issue in this case because James pleaded not guilty to the conspiracy charge and presented extensive evidence of his addiction to cocaine in order to explain his presence at 907 West Long Street during the time of the conspiracy. *See United States v. Cardenas,* 895 F.2d 1338, 1342 (11th Cir.1990) (when a defendant charged with conspiracy enters a not guilty plea, he makes intent a material issue in the case.), *accord United States v. Hernandez,* 896 F.2d 513 (11th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990). A court may admit a prior offense to prove intent if: (1) the extrinsic offense requires the same intent as the charged offense and the jury could conclude that the defendant committed the extrinsic offense; and (2) the court finds that the probative value of the evidence weighs more heavily than the prejudice the defendant would sustain if admitted. *United States v. Jones,* 913 F.2d 1552, 1566 (11th Cir.1990); *Cardenas,* 895 F.2d at 1343. The court should consider such factors as the differences between the charged and extrinsic offenses, their temporal remoteness, and the government's need for the evidence to prove intent when assessing whether the probative value of extrinsic evidence outweighs the threat of unfair prejudice. *United States v. Diaz–Lizaraza,* 981 F.2d 1216, 1224-25 (11th Cir.1993).

In this case, the challenged similar act involved a prior arrest for possession of a distributable amount of cocaine. The challenged act involved the same mental state as the charged crime because both incidents involved possession of the same illicit drug, cocaine; hence, it satisfies the requisite intent component recited in *Cardenas.* The

second component in evaluating the admissibility of similar acts evidence requires the court to weigh its probative value against the threat of unfair prejudice. Possession of cocaine is the exact conduct James is being charged with in this case; the arrest occurred some four years prior to the crime charged in this case; however, the arrest is not too remote in time in light of the heavy burden of proving James's intent to conspire to possess with intent to distribute cocaine base. The district court properly admitted similar act evidence of the prior arrest for possession of a distributable quantity of cocaine base to establish intent where James pleaded not guilty, placing intent in issue, and where intent is an element of the crime charged, in this case, possession with intent to distribute.

Sentencing

*Quantity of Cocaine*

 The appellants contend that the government failed to meet its burden of proving the exact weight of the cocaine involved in this alleged conspiracy. We review the district court's determination of a defendant's sentence under the Sentencing Guidelines utilizing the clearly erroneous standard. *United States v. Beasley*, 2 F.3d 1551, 1561 (11th Cir.1993); *United States v. Robinson*, 935 F.2d 201, 205 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992).

 The government must establish the quantity of drugs involved in a drug conspiracy by a preponderance of the evidence. *Beasley,* 2 F.3d at 1561. In this case, the government presented testimony from Agent Savedge who examined all the calls on the composite exhibit that concerned the distribution of drugs, and used 300 of the approximately 8,000 calls that were intercepted to construct the exhibit. Agent Savedge calculated that from those 300 calls the conspirators had handled 14,280 grams of cocaine base. The government argues that the district court reasonably concluded that the conspirators discussed the distribution of only 720 grams more of cocaine base during the remaining 7,700 calls that were not included in the composite exhibit. The district court's determination of the quantity of cocaine involved in this case was not clearly

erroneous in light of the testimony presented.

*Firearm Possession*

 Appellant, Brian Carson, contends that the district court improperly held him accountable pursuant to U.S.S.G. § 2D1.1(b)(1) (1991) for a firearm found during the search of a house at 510 Daniels Street. Section 2D1.1(b)(1) instructs sentencing courts to increase a defendant's base offense level two levels if the defendant possessed a dangerous weapon during a drug offense. The district court enhanced Carson's base offense level upon its finding that Carson could reasonably have foreseen Sims's firearm possession.

We review the district court's factual findings for clear error. *United States v. Louis,* 967 F.2d 1550, 1553 (11th Cir.1992). In this circuit, firearm enhancement is appropriate when: "(1) the possessor is charged as a coconspirator; (2) the defendant whose sentence is to be enhanced was a member of conspiracy at the time of firearm possession; and (3) the possession of the firearm was in furtherance of the conspiracy." *United States v. Martinez*, 924 F.2d 209, 210 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 203, 116 L.Ed.2d 163, —— U.S. ——, 112 S.Ct. 204, 116 L.Ed.2d 163 (1991) (citing *United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989)). Carson argues that the district court improperly held him accountable for Sims's firearm possession for the government failed to connect the firearm to him or to the offense. The government argues that the district court properly held Carson accountable for possession of the firearm because Carson could reasonably foresee the presence of the firearm. This court has held that "protestations that [the defendants] were in fact unaware of the firearm possession [of a coconspirator] do[es] not upset the district court's finding that the firearm possession was reasonably foreseeable." *Martinez,* 924 F.2d at 210, *Otero,* 890 F.2d at 367. The district court properly held Carson responsible for Sims's possession of the firearm because: (1) Sims was charged as a coconspirator; (2) Carson was a member of the conspiracy at the time of the firearm possession; and (3) the firearm possession was in furtherance of the conspiracy.

CONCLUSION

Based on the discussion above, we affirm the appellants' convictions and sentences because the district court (1) properly denied the appellants' motions to suppress evidence obtained as a result of the wire tap of oral communications; (2) properly admitted into evidence tapes and transcripts of intercepted oral communications; (3) properly admitted into evidence similar acts evidence of James Wheeler; (4) properly calculated the appellants' offense levels; and (5) the government presented sufficient evidence to support each appellants' convictions.

AFFIRMED.