**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth L. BAUM, d/b/a Regional Investment Corporation,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pamela Warfield LARSON,**
**Defendant–Appellant.**

**Nos. 91–5684, 91–5685.**

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1992.

Decided Sept. 1, 1992.

As Amended Sept. 10, 1992.

See also 785 F.Supp. 570.

Charles Russell Burke, Virginia Beach, Va., argued, for defendants-appellants.

Robert W. Wiechering, Asst. U.S. Atty., Norfolk, Va., argued (Richard Cullen, U.S. Atty., on brief), for plaintiff-appellee.

Before SPROUSE and HAMILTON, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

SPROUSE, Circuit Judge:

Pamela Warfield Larson and Kenneth L. Baum, wife and husband, pled guilty respectively to making a false statement in violation of 18 U.S.C. § 1014 and to wire fraud, 18 U.S.C. § 1343, in connection with their application for a loan to purchase residential property. Larson was sentenced under the Sentencing Guidelines to a term of ten months' imprisonment, and Baum was sentenced to twelve months' imprisonment. They challenge on appeal the district court's calculation for sentencing purposes of the amount of loss attributable to their fraudulent conduct. We reverse and remand for resentencing.[1]

---

1. Larson also argues on appeal that the district court imposed a two year term of supervised release upon her in contravention of the one year term provided for in the plea agreement. The government concedes this error, and it should therefore also be corrected on remand.

## I

Around August 1986, Baum purchased a home at 1325 Lake James Drive in Virginia Beach, Virginia, putting title to the home in Regional Investment Corporation, a company he owned. Baum and Larson were married a few months later, and, following their marriage, they resided at the Lake James home. In October 1987, Baum suffered a heart attack. As a result of the heart attack and subsequent hospitalization, the couple's income declined dramatically. By January 1988, the mortgage payments were delinquent.

Consequently, they decided to refinance the property. Their plan was to place the house in Larson's name and to obtain a new loan with which to extinguish the existing loan. Larson and Baum therefore applied to First Union Mortgage Corporation for a loan; various papers in support of the loan application, however, included concededly fraudulent misrepresentations with regard to the couple's income, employment, and marital status.

On April 29, 1988, Baum and Larson executed a settlement statement representing that the residence sold for $180,000 and that the new loan from First Union amounted to $168,700. After closing, Baum and Larson continued to live at the residence. They made all mortgage payments on the residence until just before sentencing.

After an investigation by the Federal Bureau of Investigation, Baum and Larson were indicted in April 1991 for criminal conspiracy to defraud, making false statements to a financial institution, intimidating and threatening a witness, and wire fraud. Baum subsequently pled guilty to one count of wire fraud, 18 U.S.C. § 1343, and Larson pled guilty to one count of making a false statement to a financial institution, 18 U.S.C. § 1014.

The district court sentenced the defendants under U.S.S.G. § 2F1.1 (1988), which governs crimes involving fraud and deceit. That guideline provides for a base offense level of six points. Section 2F1.1(b)(1) provides for additions to the base offense level according to the magnitude of the loss associated with the offense. The district court determined the amount of loss to be equal to the amount of the loan, $168,700, and added six points to the base offense level.[2] The court also added two points for more than minimal planning and deducted two points for acceptance of responsibility.

Baum and Larson were sentenced to twelve months' imprisonment and ten months' imprisonment respectively; both sentences were within the ranges appropriate for their total offense levels. The district court also imposed a three year term of supervised release upon Baum and two years of supervised release upon Larson.

## II

On appeal, Baum and Larson argue that the district court improperly calculated the amount of loss associated with their fraudulent conduct. They contend that, in calculating the amount of loss, the district court should have considered the value of the security interest in the property which they conveyed to First Union, as well as the fact that, until sentencing, they had made all payments on the loan. The government contends that the better rule is that a defendant must be sentenced according to the full amount of the loan, even if the lender might recover part of the loan by foreclosing on a mortgage or resorting to some other kind of security interest. We agree with Baum and Larson.

---

**2.** Also included in the calculation of Baum's sentence was a $94,500 loan obtained by Baum from Ben Franklin Savings and Loan in 1987. The district court included this transaction in calculating Baum's offense level, concluding that the transaction was part of the same course of conduct as the First Union loan. *See* U.S.S.G. § 1B1.3(a)(2). Accordingly, Baum received seven added points for the loss associated with his crime. Baum has not challenged the propriety of this determination, however, on the record in this case, we are of the view that it was error to find that this transaction was part of the same course of conduct as the First Union loan. In light of our holding, during resentencing the district court will have to determine the amount of loss related to the First Union transaction, rather than simply considering the amount of the loan.

Commentary Note 2 to U.S.S.G. § 2B1.1 provides that:

"Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim. When property is damaged, the loss is the cost of repairs, not to exceed the loss had the property been destroyed. In cases of partially completed conduct, the loss is to be determined in accordance with the provisions of Section 2X1.1 (Attempt, Solicitation, or Conspiracy Not Covered by a Specific Guideline). *E.g.*, in the case of the theft of a government check or money order, loss refers to the loss that would have occurred if the check or money order had been cashed. Similarly, if a defendant is apprehended in the process of taking a vehicle, the loss refers to the value of the vehicle even if the vehicle is recovered immediately.

"Loss," as the term is used in the guidelines, includes "intended, probable, or otherwise expected loss." *See United States v. Schneider*, 930 F.2d 555, 558 (7th Cir. 1991). The background note to § 2B1.1 indicates that "[t]he value of property taken plays an important role in determining sentences ... because it is an indicator of both the harm to the victim and the gain to the defendant." In this case, however, there is no evidence that Baum and Larson intended for the lender to lose the full amount of the mortgage, or that they could have profited to that extent. Rather, the evidence indicates that although they intended to fully pay off the loan, Baum and Larson also intended to (and did) induce the lender to unknowingly subject itself to a significant and unappetizing risk—the risk that they would default on the loan.

 In our view, the potential consequences of default, rather than the amount of the loan, best measure the "loss" to which Baum and Larson exposed the lender. Accordingly, because Baum and Lar-

son conveyed a security interest in the real estate to the bank when they obtained the loan, the value of the security interest should be deducted from the amount of the loan in determining "loss" for purposes of enhancing their sentences. Payments made by Larson and Baum should also be considered.

In *United States v. Rothberg*, 954 F.2d 217, 219 (4th Cir.1992), we held that "the amount recovered or reasonably anticipated to be recovered from collateral that secures a loan should be considered in calculating the amount of actual loss." In support of our holding in *Rothberg*, we relied upon a comment added to the November 1991 version of the Sentencing Guidelines, which relates specifically to fraudulent loan applications. *See id.* at 219, n. 3 (quoting U.S.S.G. § 2F1.1 comment (n. 7(b)) (Nov.1991) ("the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan")).

The government attempts to distinguish *Rothberg*, arguing that the instant case involves guidelines which were in effect before the comment cited in *Rothberg* was added. We note, however, that *Rothberg* itself was argued on November 1, 1991. Accordingly, the conduct at issue in *Rothberg* also predated the added comment. For that matter, the added comment merely clarified, rather than changed, existing sentencing law. *Cf. United States v. Deigert*, 916 F.2d 916 (4th Cir.1990) (district court properly applied amendment to Sentencing Guidelines added after underlying offense was committed, because amendment was not substantive change, but rather, clarification of existing guideline). Accordingly, the sentences of Baum and Larson are vacated, and the cases are remanded for resentencing consistent with this principle.

REVERSED, SENTENCES VACATED, AND REMANDED.