UNITED STATES of America, Plaintiff–Appellee,

v.

Andrew MENICHINO, Defendant–Appellant.

No. 91–3765.

United States Court of Appeals, Eleventh Circuit.

April 23, 1993.

Charles F.C. Ruff, Washington, DC, for defendant-appellant.

Paul Moriarty, Tampa, Mark J. Krum, Tamra Phipps, Asst. U.S. Attys., Tampa, FL, for plaintiff-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

Menichino was convicted of conspiracy to commit bank fraud, wire fraud, and mail fraud, and three substantive counts of wire fraud.

Menichino wanted to sell his 55–foot power boat and negotiated with undercover investigating agents for that purpose. The evidence was sufficient to show the following. Menichino represented to agent Carroll that the boat was worth no more than $250,000 and that Carroll could buy it for $240,000. Carroll asked Menichino if Menichino could obtain an appraisal valuing the

boat at $350,000. The appraisal would be used by Carroll to secure a bank loan of 80% of that amount, or $280,000. Of the loan proceeds, $240,000 would be paid to Menichino for the boat and Carroll was to pocket the balance of $40,000.

Menichino bribed marine surveyor Hickman, who produced an appraisal setting a value of $349,000–$351,000. The appraisal was delivered to Carroll. Hickman's appraisal also falsely stated that a "sea trial haul out" [1] had been performed.[2]

■ The court did not err in denying Menichino's motion for judgment of acquittal, made on the ground that there was a total failure of proof that the appraisal was material. Menichino knew that Carroll proposed to use the appraisal to obtain a bank loan of 80% of the appraised value. Menichino told Hickman that he needed an appraisal of $350,000. Carroll talked with an Atlanta, Georgia bank concerning a loan based on appraised value. This evidence was sufficient to support materiality. Actual reliance on false statements is not determinative, but rather the question is whether the false representations were capable of influencing the bank's actions. *U.S. v. Swearingen*, 858 F.2d 1555, 1558 (11th Cir.1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989). Whether a misrepresentation is material depends in part on the fraudulent intent of the defendant. *U.S. v. Falcone*, 934 F.2d 1528, 1545 (11th Cir.1991), *vacated*, 939 F.2d 1455 (11th Cir.1991), *modified in part and reinstated in part*, 960 F.2d 988, 990 n. 6 (11th Cir.1992) (en banc).

> So long as a defendant, in order to cause a bank to take some action, makes a misrepresentation that a reasonable bank would consider important in deciding whether to act as the defendant wishes, and intends by this representation to "deceive the [b]ank, in the furtherance of fraud," *id.*, the misrepresentation is material, even if the bank does not act as the defendant desires or does not actual-

ly rely on the misrepresentation in so acting, *id.;* [*U.S. v.*] *Scott*, 701 F.2d [1340,] 1345 [ (11th Cir., 1983) ]; "[i]t does not lie with one knowingly making false statements with intent to mislead . . . to.say that the statements were not influential or the information not important," *id.* (quoting *Kay v. United States*, 303 U.S. 1, 5–6, 58 S.Ct. 468, 471, 82 L.Ed. 607 (1938)).

*Id.* In this case it was not necessary that the government produce testimony of a bank officer of the particular bank that it would have relied on the appraisal, or to negate that the bank might only rely on sales price, or to negate that it might have required an appraisal by a surveyor designated by it. The motion for judgment of acquittal was properly denied.

Other contentions of Menichino require no comment except those relating to his sentence.

The district court imposed four 33–month sentences, to run concurrently. This sentence was based on a total offense level of 12, consisting in part of a 4–level increase for an intended loss of $40,000 under § 2F1.1(b)(1)(E). The court calculated the amount of intended loss by taking the difference between $280,000, the amount of the loan that Menichino thought Carroll would obtain based on the inflated appraisal, and the sale price of $240,000. Menichino contends that this calculation is unsupported by the record and a misinterpretation of the Guidelines.

■ The calculation of the amount of loss under U.S.S.G. § 2F1.1 is a factual determination reviewed for clear error. *See U.S. v. Shriver*, 967 F.2d 572, 574 (11th Cir.1992); *see also U.S. v. Smith*, 951 F.2d 1164, 1166 (10th Cir.1991). The district court's interpretation of the Guidelines is reviewed de novo. *U.S. v. Odedina*, 980 F.2d 705, 707 (11th Cir.1993).

---

**1.** In a sea trial haul out the surveyor takes the vessel away from the dock and performs various tests and maneuvers, then the boat is lifted from the water so the bottom and underbody can be inspected.

**2.** Hickman pleaded guilty to the conspiracy count of the indictment.

■ At all times relevant to this case the text of § 2F1.1 has provided:

(1) If the loss exceeded $2,000, increase the offense level as follows:

| Loss (Apply the Greatest) | Increase in Level |
|---|---|
| .... | |
| (E) More than $20,000 | add 4 |
| (F) More than $40,000 | add 5 |

U.S.S.G. § 2F1.1(b)(1). "Loss," as used in § 2F1.1, has been defined consistently as the greater of the value of the property the defendant actually took or the property he intended to take. But, subsequent to Menichino's sentencing, application note 7(b) was added to § 2F1.1's commentary.[3] That note clarifies that, in a loan application case involving misrepresentation of assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lender could recover from the collateral. *Id.* § 2F1.1, comment. (n. 7(b)); *see also U.S. v. Baum*, 974 F.2d 496, 499 (4th Cir.1992); *U.S. v. Kopp*, 951 F.2d 521, 534 (3d Cir.1991); *Smith*, 951 F.2d at 1167–68. Prior to the new commentary some courts had held that, in a fraudulent loan application case, the loss under § 2F1.1 should be the entire amount of the loan because that was the amount put at risk of default by the defendant's fraud. *See, e.g., U.S. v. Brach*, 942 F.2d 141, 143 (2d Cir.1991); *U.S. v. Johnson*, 908 F.2d 396, 398 (8th Cir.1990).

■ Menichino was sentenced July 25, 1991, prior to the Nov. 1, 1991 addition of application note 7(b). He contends, howev-er, that this court should consider the new commentary because it does no more than clarify § 2F1.1. The government contends that the amendments should not be considered because they are not designated as a clarification. This court has held that a clarifying amendment should be considered even if it becomes effective after the defendant was sentenced. *U.S. v. Louis*, 967 F.2d 1550, 1553 (11th Cir.1992); *U.S. v. Shores*, 966 F.2d 1383, 1388 n. 2 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 353, 121 L.Ed.2d 268 (1992); *U.S. v. Gardiner*, 955 F.2d 1492, 1499 (11th Cir.1992); *U.S. v. Howard*, 923 F.2d 1500, 1504 (11th Cir. 1991). A new clarifying amendment to the commentary should not be considered, however, if this court has already addressed and decided how the guideline should be interpreted. *Louis*, 967 F.2d at 1554; *U.S. v. Stinson*, 957 F.2d 813, 815 (11th Cir.), *cert. granted,* —— U.S. ——, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992). Because this court has not previously decided how loss should be calculated in the context of fraudulent loan applications, the amendments to the commentary should be considered if they merely clarify how § 2F1.1 should be interpreted.

This court has stated that most amendments to the commentary do not effect a substantive change but rather are meant only to clarify a particular guideline. *U.S. v. Scroggins*, 880 F.2d 1204, 1215 (11th

---

**3.** Application note 7(b) states:

In fraudulent loan application cases and contract procurement cases where the defendant's capabilities are fraudulently represented, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan.

*Id.* § 2F1.1, comment. (n. 7(b)) (Nov. 1, 1991). The purpose of this amendment was to "provide additional guidance with respect to the determination of loss." *Id.* App.C., at 224. The 1992 amendments to the Guidelines revised the note:

In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet

come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. However, where the intended loss is greater than the actual loss, the intended loss is to be used.

*Id.* (Nov. 1, 1992). The Sentencing Commission stated that the purpose of the 1992 amendment was to:

clarif[y] that interest is not included in the determination of loss. In addition, it clarifies that in fraudulent loan application cases, as in other types of fraud, if the intended loss is greater than the actual loss, the intended loss is used. Finally, it makes an editorial improvement in this commentary by deleting an unnecessary phrase.

*Id.* App.C., at 269.

Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). The amendments to § 2F1.1's commentary are consistent with this pattern. Application note 7(b) does not change the definition of "loss" but rather is intended to clarify how that definition should be applied in the context of fraudulent loan applications. *Baum,* 974 F.2d at 499. Because application note 7(b) only clarifies how loss should be calculated under § 2F1.1, we may consider it as we interpret the version of § 2F1.1 in effect at Menichino's sentencing.

 Note 7(b) explains that, in a fraudulent loan application case, loss is

> the amount of the loan not repaid at the time the offense is discovered reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. However, where the intended loss is greater than the actual loss, the intended loss is to be used.

U.S.S.G. § 2F1.1, comment. (n. 7(b)). The district court followed this methodology. Although there was no actual loss it determined that Menichino fraudulently misrepresented the value of his boat as $349,000–351,000 with the intent of helping the agent obtain a $280,000 loan. Because the boat would have been given as collateral and was worth $240,000, the court found that Menichino intended a net loss of $40,000. We therefore conclude that the court did not misinterpret § 2F1.1. *See Baum,* 974 F.2d at 499.[4]

The court's finding that Menichino intended to cause a $40,000 loss is not clearly erroneous. Menichino says that the government failed to prove that the bank would have loaned 80% of the appraisal value rather than some part of the sales price, which he says was necessary to establish an intended loss. This ignores the full import of the government's case. The appraisal was an integral part of the scheme to convince the bank that the boat was worth $350,000. Moreover, before

Menichino obtained the fraudulent appraisal the agents made him aware that they needed a $350,000 appraisal so they could get a loan based on that amount. The record supports the district court's conclusion that Menichino participated in a scheme to misrepresent the value of the boat as $350,000 and thereby fraudulently induce a $280,000 loan.

 Menichino also asserts that to establish that he intended a $40,000 loss it was necessary for the government to show that he believed the loan would not be repaid. Proof that the defendant intentionally induced a bank to unknowingly subject itself to the risk of default is sufficient to establish that the defendant intended to cause a loss. *Baum,* 974 F.2d at 496. The record supports the conclusion that, when Menichino obtained the appraisal he intended to induce the bank to lend $280,000 when it would not have been willing to do so if it had known the boat's true value was only $240,000. The district court therefore correctly found that, under § 2F1.1, Menichino intended to cause a $40,000 loss.

AFFIRMED.

---

4. Although we considered application note 7(b), and it supports the conclusion that collateral given by the defendant should be considered, we would reach the same result without the clarification provided by the new commentary. *See Kopp,* 951 F.2d at 534; *Smith,* 951 F.2d at 1167–68.