993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenny Joe JAMES, Defendant-Appellant.
 No. 92-5344.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: December 16, 1992
Decided: May 25, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CR-91-72)
 H. Gerald Beaver, BEAVER, HOLT, RICHARDSON, STERNLICHT, BURGE & GLAZIER, P.A., Fayetteville, North Carolina, for Appellant.
 Margaret Person Currin, United States Attorney, Peter W. Kellen, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINSON and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Kenny Joe James, a North Carolina resident and a former vicepresident of First Southern Financial Corporation (FSF) of Fayetteville, North Carolina, pled guilty to making a false statement to a financial institution, the then North Carolina National Bank (NCNB), in violation of 18 U.S.C.A. § 1014 (West Supp. 1992). James appeals his sentence, arguing that the district court erred in calculating the amount of the loss incurred as a result of his criminal activity. United States Sentencing Commission, Guidelines Manual, § 2F1.1(b) (Nov. 1991). We find that the district court did not clearly err in calculating James's offense level, and affirm his sentence.
 
 
 2
 A federal grand jury indicted James on five counts of violating § 1014. Count One accused James of inducing NCNB to increase its line of credit to FSF's factoring business by $3.5 million in December 1989 by not disclosing that FSF's primary customer, Air America, had filed for bankruptcy protection in the autumn of 1989. James was accused in the remaining counts of misrepresenting the "acceptable" accounts receivable he listed in four reports he made to the bank during the spring and summer of 1990.
 
 
 3
 NCNB had extended credit to FSF and FSF's predecessor company for twenty years. Most of FSF's activity involved factoring government transportation accounts receivable, but in approximately 1989, FSF began factoring commercial accounts receivable for as much as twenty percent of its business. Because James did not tell the bank about Air America's bankruptcy filing, the bank was not able to maintain a perfected security interest or to file a timely proof of claim in the bankruptcy court in California, though James retained legal counsel and filed a claim on FSF's behalf in the bankruptcy proceeding.
 
 
 4
 In the autumn of 1990, James disclosed his deceit to his employer and to the FBI. James told FBI agents that he made the false statements to the bank to protect his job and to ensure FSF's continued solvency. James was executive vice-president of FSF, and its predecessor company, for more than four years, and was a minority shareholder in FSF. On December 2, 1991, pursuant to a plea agreement, James pled guilty to Count Five (his false report to the bank on August 20, 1990) in exchange for the dismissal of the other four counts.
 
 
 5
 The presentence investigation report estimated the loss attributable to James's fraud at $3.72 million. James filed objections to the report and filed a motion for a downward departure. After the sentencing hearing, the district court found that James was responsible for the bank's $3.72 million loss and enhanced James's offense level by thirteen points under U.S.S.G. § 2F1.1(b)(1)(N). Further, the district court adopted the presentence report's recommendation to increase James's offense level by another two points for an abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3, which gave James an offense level of twenty-one. That offense level and a criminal history category of I placed James in the guideline range of 37 to 46 months. The district court sentenced James to thirty-seven months in prison, fined him $7,500, and ordered thirty-six months of supervised release. The district court stayed the sentence and released James pending his appeal.
 
 
 6
 A district court's determination of the amount of loss involved in a crime of deceit or fraud is calculated under the Sentencing Guidelines by using the greater of either the actual loss or the intended or probable loss that the defendant attempted to inflict. United States v. Rothberg, 954 F.2d 217, 218 (4th Cir. 1992). Calculating the amount of loss is not abandoned because it may appear too speculative an exercise. Id. at 219. A district court is not required to precisely calculate the loss attributable to fraud. Rather, it need only make a reasonable estimate, given available information. U.S.S.G.s 2F1.1, comment. (n.8). Its findings on whether the Defendant caused or intended a loss are factual questions which an appellate court will not disturb unless they are clearly erroneous. Rothberg, 954 F.2d at 219; United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir. 1989).
 
 
 7
 The amount recovered from the collateral which secures a loan should be considered in calculating the amount of actual loss.
 
 
 8
 Rothberg, 954 F.2d at 219. Loss should be computed by subtracting what the lending institution recovered, or can expect to recover, out of the collateral from the amount of the unpaid loan. U.S.S.G. § 2F1.1, comment. (n.7(b)). The loss that can be attributed to a defendant who made a false statement subsequent to receiving a legitimate bank loan is the amount of the outstanding loan, less any amount recouped by the bank from loan collateral, less the estimated amount the bank would have lost had the statement not been false. United States v. Wilson, F.2d, # 6D 6D6D6D# (4th Cir. Nov. 23, 1992).
 
 
 9
 This was essentially the approach taken by the district court during the sentencing hearing. James's counsel admitted that the amount of acceptable accounts receivable James listed in his August 1990 report to NCNB ($9,546,252) was false, because that figure included accounts more than ninety days old. Counsel admitted under questioning that NCNB would not have experienced "this" loss if the bank had not been misled by James's August 1990 report, though he argued the bank would have suffered a greater loss had James revealed Air America's bankruptcy when it occurred earlier. The district court then expressly found as fact that the presentence report's calculation of loss ($3.72 million) was correct because James's August 1990 report "clearly states an amount of receivables that would have prevented, had the statement been accurate, ... the loss in the amount as now calculated." (JA at 128).
 
 
 10
 All the parties admitted that NCNB's loss was $3.72 million. James contests whether all of that loss can be attributed to him. James also argued below that the losses that did occur would have occurred anyway and that he essentially misrepresented the age, but not the amounts, of the accounts receivable.
 
 
 11
 James's position is without merit. Enhancement of a defendant's offense level under § 2F1.1(b) can be triggered by the defendant's mere intent to induce the lender "to unknowingly subject itself to a significant and unappetizing risk." United States v. Baum, 974 F.2d 496 (4th Cir. 1992) (defendants did not intend for lender to lose full amount of mortgage). Here, the district court heard testimony that the bank's actual loss was $3.72 million-the amount it wrote off after an internal investigation. The probation officer reported that James admitted that the bank advanced approximately $4 million in reliance on the false accounts receivable statements, that the bank could be overextended as much as $3 million, and that losses to FSF resulting from his conduct could total $5 million. A bank official told the probation office that the bank faced a possible loss of $5,757,000 on its relationship with FSF and that it had written off $3,720,000 as a total loss. The presentence report disclosed that James overstated FSF's accounts receivable by $5,757,000, which included $2.424 million in non-collectibles from Air America alone.
 
 
 12
 We find that the district court had sufficient information before it to determine the amount of loss James caused by filing a false financial statement with NCNB. By adopting the bank's write-off figure of $3.72 million, the district court's calculation does not saddle James with the full amount of the factoring loans, but implicitly subtracts the bank's recovery efforts and the estimated amount the bank would have lost had James's August 1990 statement not been false. On this record, we cannot say that the district court clearly erred in finding that the losses attributable to James's criminal conduct fell between $2.5 million and $5 million and in enhancing James's offense level by thirteen points under § 2F1.1(b)(1)(N).
 
 
 13
 Therefore, we affirm James's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED