United States Court of Appeals,

Eleventh Circuit.

No. 93-9404.

UNITED STATES of America, Plaintiff-Appellee,

v.

Glenda NORRIS, Defendant-Appellant.

April 25, 1995.

Appeal from the United States District Court for the Middle District of Georgia. (No. 3:92-00006-CR-ATH(DF), Duross Fitzpatrick, Chief Judge.

Before EDMONDSON and CARNES, Circuit Judges, and HAND[*], Senior District Judge.

HAND, Senior District Judge:

Defendant-appellant Glenda Norris, president, co-owner, and director of the now defunct[1] Athens School of Cosmetology of Athens, Georgia, and other defendants were indicted on December 21, 1992, in the United States District Court for the Middle District of Georgia under 18 U.S.C. § 371 for conspiring to defraud the United States through student-grant and -loan programs from July 1988 through June 1990. The indictment alleged, *inter alia,* that Mrs. Norris's mother, son-in-law, and three children, including Keith Norris, all of whom were also defendants below, received student grants from the federal government and student loans guaranteed by the federal government to attend the Athens School of Cosmetology. Instead of enrolling, they performed personal services and errands, including baby sitting, house cleaning, and

---

[*]Honorable W.B. Hand, Senior United States District Judge for the Southern District of Alabama, sitting by designation.

[1]R-113-7.

construction work, for the co-owners of the school.  There were $6,290 in grants and $35,550 in loans for a total of $41,840.[2]

The government began investigating in April 1989 and recommenced its investigation on February 7, 1990.[3]  Mrs. Norris's son, Keith Norris, repaid $6,625 in loans from March 16, 1990, to September 30, 1993.[4]

Mrs. Norris entered a guilty plea.  At sentencing, on November 8, 1993, the district court agreed with the presentence investigation report and found that the "loss" to the government was $41,840.[5]  The base offense level under the United States Sentencing Guidelines was offense level 6.    *See* U.S.S.G. § 2F1.1(a).  The district court then made five adjustments to the offense level, including a five-level increase because the loss was greater than $40,000.  *See id.* § 2F1.1(b)(1)(F).  After the five adjustments, Mrs. Norris was at offense level 14, which had a sentencing range of 15 to 21 months with her criminal-history category.  *See id.* § 5A (sentencing table).  The district court sentenced Mrs. Norris to 18 months' imprisonment followed by three years' supervised release, and ordered her and the other co-owner of the school to pay restitution of $35,215.  That amount was the difference between $41,840 (the total of the grants and loans) and $6,625 (the amount her son had repaid).[6]

---

[2]R-1.

[3]Presentence Investigation Report, ¶ 5.

[4]*Id.* at ¶ 12.

[5]R-113-8.

[6]R-107;  R-113-11.

In calculating the loss to the government, the district court (1) counted both grants and loans and (2) did not subtract what her son had repaid. Mrs. Norris appeals on both points. She contends the district court should have counted only the grants. In the alternative, she contends the district court should have included both grants and loans but excluded the loans which her son had repaid. Had the district court counted only the grants, or had it counted both the grants and the loans but excluded those amounts which her son had repaid, the amount of the loss would have been under $40,000. Instead of a five-level increase under U.S.S.G. § 2F1.1(b)(1)(F), she would have received less of an increase for the amount of the loss. *See id.* § 2F1.1(b)(1). Her total offense level would have been lower.

The calculation of the amount of a loss under the sentencing guidelines is reviewed for clear error, while an interpretation of the guidelines is reviewed *de novo. United States v. Menichino,* 989 F.2d 438, 440 (11th Cir.1993) (citing *United States v. Odedina,* 980 F.2d 705, 707 (11th Cir.1993); *United States v. Shriver,* 967 F.2d 572, 574 (11th Cir.1992); *United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991)); *see also United States v. Cannon,* 41 F.3d 1462, 1466 (11th Cir.1995) (the court of appeals reviews findings of facts for clear error and reviews the sentencing court's application of the sentencing guidelines to the facts *de novo* (citing *United States v. Davis,* 902 F.2d 860, 861 (11th Cir.1990); *United States v. Rodriguez,* 959 F.2d 193 (11th Cir.1992))).

I

The United States Sentencing Guidelines define the "loss" in cases involving fraud or deceit.

> [T]he loss is the value of the money, property, or services unlawfully taken[.  I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss....
>
> There are, however, instances where additional factors are to be considered in determining the loss or intended loss: ...
>
> (b) Fraudulent Loan Application and Contract Procurement Cases
>
> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss).  For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, *the loss is the amount of the loan not repaid at the time the offense is discovered,* reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. However, where the intended loss is greater than the actual loss, the intended loss is to be used....

U.S.S.G. § 2F1.1, comment. (n. 7) (emphasis added);  *see also Menichino,* 989 F.2d at 441 (citing U.S.S.G. § 2F1.1, comment. (n. 7(b));  *United States v. Baum,* 974 F.2d 496, 499 (4th Cir.1992); *United States v. Kopp,* 951 F.2d 521, 534 (3d Cir.1991);  *Smith,* 951 F.2d at 1167-68));  *Kopp,* 951 F.2d at 536 (citing U.S.S.G. § 2F1.1).

## II

We first consider the propriety of including both grants and loans in the loss, instead of only the grants.  Section 2F1.1 clearly permits including the loans in the loss.  *See* U.S.S.G. § 2F1.1, comment. (n. 7(b)).

## III

We next consider the propriety of including in the loss the amounts which the appellant's son had repaid.

Mrs. Norris pointed out at oral argument that an example in

application note 7(b) is a loan involving collateral and one whose repayment is not necessarily deferred. *See* U.S.S.G. § 2F1.1, comment. (n. 7(b)). By contrast, student loans usually require no collateral and allow repayment after the academic year for which they are made. Therefore, she would have us hold that her son's repaid loans should not be included in the calculation. We disagree. The example in application note 7(b) is an illustration, not a restriction. The facts of this case may not resemble the facts of the example, but that does not mean that the application note, or the principle which the example illustrates, does not apply.

The Fourth Circuit has held that "the potential consequences of default, rather than the amount of the loan, best measure the "loss' to which [the defendant] exposed the lender.... Payments made by [the defendant] should also be considered." *Baum,* 974 F.2d at 499 (quoting *United States v. Rothberg,* 954 F.2d 217, 219 (4th Cir.1992)). We agree with *Baum* in that a district court which uses application note 7(b) should *consider* repayments; however, *Baum* does not state, and we decline to hold, that repayments can never be included in the loss. *See* U.S.S.G. § 2F1.1, comment. (n. 7(b)).

The record in this case does not warrant our finding of fault with the court's conclusion. The trial court took note of the fact of repayment by the son in determining the amount of *restitution* due. The court reduced the restitution by the amounts repaid but found that such repayment came "way too late" to reduce the *loss.*[7] In so concluding, the court complied with the requirement of

---

[7] R-113-8, 9.

application note 7(b) to consider the amount of the loss when the "offense" was "discovered."

The presentence investigation report states that "no payments were made toward the loans until after the offense had been discovered by the authorities."[8] Although some other parts of this report were objected to and discussed at sentencing, this crucial point was not. Without objection and in the absence of manifest injustice, this conclusion becomes binding. *See United States v. Brokemond,* 959 F.2d 206, 210 (11th Cir.1992) ("Appellant did not file an objection to the sentencing report and did not object at sentencing when no downward departure was granted. ... Consequently, he is precluded from raising the issue for the first time on appeal." (citing *United States v. Asseff,* 917 F.2d 502, 506 N. 4 (11th Cir.1990); *United States v. Pritchett,* 898 F.2d 130, 131 (11th Cir.1990))); *United States v. Jones,* 899 F.2d 1097, 1103 (11th Cir.) ("Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice."), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill,* 984 F.2d 1136, 1137 (11th Cir.1993) (en banc). This result is further supported by the fact that defense counsel was given at least two *additional* opportunities to object to the

---

[8]Addendum to Presentence Investigation Report, 2.

findings of the presentence investigation report.[9]  There were no objections, so under our holdings any such objections now come too late.

AFFIRMED.

[9] R-113-9, 12.