Filed: July 14, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-4734
(CR-91-51, CR-96-26, CR-97-25)

United States of America,

Plaintiff - Appellee,

versus

George Eldridge, etc.,

Defendant - Appellant.

O R D E R

The court amends its opinion filed July 2, 1998, as follows:

On the cover page, section 3, line 3 -- "James P. Jones, District Judge" is corrected to read "Samuel G. Wilson, Chief District Judge."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

GEORGE ELDRIDGE, a/k/a George P.
Ison,
<u>Defendant-Appellant.</u>

No. 97-4734

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Samuel G. Wilson, Chief District Judge.
(CR-95-51, CR-96-26, CR-97-25)

Submitted: June 16, 1998

Decided: July 2, 1998

Before ERVIN and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

C. Randall Lowe, TATE, LOWE & ROWLETT, P.C., Abingdon,
Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney,
S. Randall Ramseyer, Assistant United States Attorney, Abingdon,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

George Eldridge appeals the 175-month sentence he received after he pled guilty to fraud offenses charged in three separate indictments.**1** He challenges the district court's calculation of his criminal history score and its decision to depart upward on the ground that criminal history category VI did not adequately reflect his criminal record. See U.S. Sentencing Guidelines Manual § 4A1.3, p.s. (1995). He also contends that the district court clearly erred in determining the amount of loss, see USSG § 2F1.1, and in finding that he obstructed justice, see USSG § 3C1.1, and that he failed to accept responsibility for his offenses, see USSG § 3E1.1. Last, Eldridge argues that the district court judge erred in refusing to recuse himself. We affirm.

Eldridge's convictions resulted from his obtaining a post office box in a false name, obtaining a Visa card in a false name, obtaining a job as a security guard in a false name, completing an Immigration and Naturalization Service (INS) form in a false name, and possessing two stolen checks. Eldridge used the name "Melvin Wade White" to obtain the Visa card and to gain employment with a security services firm; he used that name on the INS form, which was part of the documentation he supplied to the securities firm. The real Melvin Wade White had once been represented by Eldridge's wife, a lawyer.

_____

**1** In No. 95-51, Eldridge pled guilty to Count One, making false statements in violation of 18 U.S.C. § 1001 (1994). In No. 96-26, Eldridge pled guilty to Counts Four and Six, fraudulent use of Social Security numbers in violation of 42 U.S.C. § 408(a)(7) (1994), and Count Ten, making false statements. In No. 97-25 (transferred from the Eastern District of Tennessee), Eldridge pled guilty to Count One, theft or receipt of stolen mail in violation of 18 U.S.C. § 1708 (1994). Pursuant to the plea agreement, fourteen additional counts were dismissed.

All five counts were placed in a single group for calculation of the base offense level. At the sentencing hearing, the district court found that Eldridge had obstructed justice by soliciting false statements from fellow inmates concerning his involvement with a shank (home-made knife) while he was in custody following his arrest. The court also increased the offense level by including in the amount of loss two stolen but uncashed checks, the amount owed on a fraudulently obtained credit card, and Eldridge's earnings from his employment as a security guard.

## I. Recusal

Before he entered a guilty plea, Eldridge asked the judge to recuse himself because his brothers and sister-in-law previously had appeared before the judge on criminal charges. The judge denied the recusal motion on the ground that he had no personal bias against Eldridge or his family. Eldridge argues on appeal that the judge demonstrated bias by imposing a harsh sentence and by preparing, before the sentencing hearing, a written explanation for the upward departure. A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1994). However, the fact that the judge has previously presided over cases involving a defendant's relatives does not, absent extraordinary facts, give rise to an appearance of partiality. See United States v. Morris, 988 F.2d 1335, 1337 (4th Cir. 1993). Nor does the court's preparation of a statement of grounds for a possible departure show that it was prejudiced and predisposed against Eldridge, as he suggests.[2]

## II. Upward Departure

Eldridge's principal dispute on appeal is with the district court's decision to depart above criminal history category VI and with the extent of the departure. Eldridge had 38 criminal history points. With a final offense level of 12, his guideline range was 30-37 months. However, because Eldridge had a lengthy criminal record, the district court departed upward under USSG § 4A1.3. To structure the depar-

_____

[2] The same judge presided over the trial of Eldridge's wife, who was charged as a co-defendant, and sentenced her to probation.

ture, the court moved to successively higher offense levels to account for the 25 excess criminal history points Eldridge had accumulated above the number necessary to place him in category VI--a procedure we have approved. See United States v. Harrison, 58 F.3d 115, 118 (4th Cir. 1995); United States v. Cash, 983 F.2d 558, 561 n.6 (4th Cir. 1992). The court also considered the fifth sentence for which Eldridge received one criminal history point under USSG § 4A1.1(c),[3] eight points that were not awarded for five sentences imposed outside the applicable time period, see USSG § 4A1.2(e), and fourteen criminal history points that were not awarded for other criminal conduct committed by Eldridge.[4] The court then moved to increasingly higher offense levels, guided by these "phantom" points, and finally determined that offense level 28 and the resulting guideline range of 140-175 months adequately represented the seriousness of Eldridge's criminal record.

We review the district court's decision to depart upward from the guideline range for an abuse of discretion. See Koon v. United States, 518 U.S. 81, 100 (1996); United States v. Rybicki, 96 F.3d 754, 756-57 (4th Cir. 1996). Under USSG § 4A1.3, an inadequate criminal history category is an encouraged ground for departure. When an encouraged factor is present, the district court must decide whether it is adequately accounted for in the applicable guideline range. This decision is reviewed de novo. See Rybicki, 96 F.3d at 758. Eldridge argues on appeal that the district court erred in considering sentences too old to be counted and conduct for which he had never been convicted. However, the court based its departure on Eldridge's unusual lifelong recidivism and the likelihood that he would commit further crimes in the future, finding that "every hour he is released will be an hour that another crime will be committed." The court considered and "assessed" points for Eldridge's old sentences and other, unchallenged criminal conduct merely as a means of structuring the departure. We find that the court did not abuse its discretion in deciding that cate-

_____

[3] This criminal history point did not count toward the criminal history score because no more than 4 criminal history points may be counted under USSG § 4A1.1(c).

[4] These were offenses for which Eldridge had never been charged but which were documented in the presentence report.

4

gory VI did not adequately reflect Eldridge's past criminal conduct or in determining the extent of the departure.

III. Criminal History Score

Next, Eldridge makes numerous claims of error in the determination of his criminal history. None of his claims have merit. He argues first that the sentences in paragraphs 107 and 108 of the presentence report did not extend into the fifteen-year period preceding his commencement of the instant offense. However, Eldridge pled guilty to offenses involving fraudulent use of Social Security numbers which began in January 1994. The fifteen-year period thus began in January 1979. Eldridge was paroled from one sentence in August 1979 and sentenced on the other charge in March 1979. Points were properly awarded for both sentences.

Eldridge argues that points were incorrectly awarded for the prior Tennessee sentences in paragraphs 108 and 114 of the presentence report because the official records did not show that he was represented by counsel. See Custis v. United States, 511 U.S. 485 (1994) (defendant may challenge validity of prior conviction on ground that it was obtained in violation of right to counsel). The probation officer's response to Eldridge's written objection noted that since June 1977 defendants in Tennessee must be advised of their right to counsel and counsel must be appointed for indigent defendants who desire representation. Eldridge provided no evidence at sentencing that he actually lacked representation in connection with the two challenged convictions. Therefore, the district court did not err in overruling his objection and awarding points for the sentences.

Eldridge objects that a Tennessee sentence in paragraph 117 of the presentence report should not be counted because it was made concurrent with two Kentucky sentences set out in paragraphs 115 and 116. He made the same claim with respect to the Virginia sentences in paragraphs 119, 123, and 124, which were concurrent with another Virginia sentence set out in paragraph 121. Eldridge argues that receiving a sentence which is made concurrent with another sentence is the same as receiving a suspended sentence and that only one point should have been awarded for each of the sentences in question under USSG § 4A1.1(c). Eldridge offered no authority for this position and

5

offers none on appeal. As none of the sentences were suspended, the court did not err in awarding more than one criminal history point for each of them.

Eldridge disputes the two points he received under USSG § 4A1.1(d) for committing the instant offense while under a criminal justice sentence. In December 1994, Eldridge was convicted of burglary, theft, forgery, and possession of marijuana for resale, and he received suspended two-year sentences on all counts. The suspension was conditioned upon his payment of costs and good behavior. Eldridge objected that the sentence of good behavior was not a sentence of probation and should not result in two extra criminal history points, but the district court found that a sentence of good behavior is the equivalent of a sentence of unsupervised probation. Unsupervised probation is considered a "criminal justice sentence" for purposes of USSG § 4A1.1(d). See USSG § 4A1.1, comment. (n.4). We therefore find that the district court did not err in finding that the two points were properly assessed.

Eldridge's last claim concerning his criminal history calculation is that the district court erred in "assigning" one point for the sentence set out in paragraph 127 of the presentence report as part of the departure when the probation officer already had awarded one point for that sentence. In fact, no double counting occurred because the sentence in paragraph 127 was the fifth sentence to receive one criminal history point under USSG § 4A1.1(c) and was not counted in the criminal history score. See USSG § 4A1.1(c) (maximum of four points may be counted under this item).

IV. Loss

The district court calculated the loss resulting from Eldridge's fraud offenses as $2,763.84. This included $928.15 he owed on a Visa card fraudulently obtained under the name Melvin Wade White and the value of the two stolen checks. The court also counted, at the government's urging, $3500 Eldridge earned while working as a security guard. Eldridge objected to inclusion of the checks because he had not cashed them and to inclusion of the amount he owed on the Visa card on the ground that the bill remained unpaid only because the bank

6

stopped sending him a statement after criminal charges were brought against him. However, he made no argument about loss at sentencing.

Eldridge contends on appeal that the court clearly erred in determining the loss, which resulted in a two-level enhancement under USSG § 2F1.1. See United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995) (standard of review). In determining fraud loss, each case is decided on its own facts. See United States v. Mancuso, 42 F.3d 836, 849 (4th Cir. 1994). We find that the stolen checks were properly included as an intended loss. See USSG § 2F1.1, comment. (n.7). And even if Eldridge intended to pay the $928 debt he incurred on the Visa card, that amount was properly treated as a loss because Eldridge induced the bank to "unknowingly subject itself to a significant and unappetizing risk," United States v. Baum, 974 F.2d 496, 499 (4th Cir. 1992), when it issued the card to him under a false identity. Moreover, it appears that he had no legitimate income with which to pay the amount owed. Similarly, while Eldridge put in the time for which he was paid by the security services firm, he had induced the firm to hire him under false pretenses. Thus, Eldridge did not provide the honest service the firm was paying for and, as a consequence of hiring him, the firm lost its contract to provide security at the motel where he worked. Consequently, the wages he was paid were properly treated as part of the loss.

V. Obstruction of Justice

While he was in custody following his arrest, Eldridge allegedly helped to make and possessed a shank (a home-made knife) and threatened to use it against the Assistant United States Attorney who prosecuted him. At the sentencing hearing, the government asked for an obstruction of justice adjustment. Eldridge subpoenaed two inmates who were incarcerated with him, Douglas Dunford and Michael VanDusen, but after talking with them Eldridge's attorney declined to call them as witnesses. They testified for the government that Eldridge had asked them to make false statements absolving him from any connection with the shank found in his cell. The district court made no finding as to whether Eldridge made or possessed the shank, but found that he had obstructed justice by soliciting false statements from fellow inmates. See USSG § 3C1.1, comment. (n.3(b), (f)). The court did not clearly err in so finding. Therefore,

7

Eldridge was not entitled to an adjustment for acceptance of responsibility even though he admitted the conduct underlying the charges to which he pled guilty. <u>See</u> USSG § 3E1.1, comment. (n.4) (conduct resulting in obstruction of justice adjustment ordinarily indicates defendant has not accepted responsibility).

For the reasons discussed, the sentence is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

8