UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

NNAMDI JUDE OKOLO,
        *Defendant-Appellant.*

No. 03-4402

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-01-414-AW)

Submitted: November 21, 2003

Decided: December 16, 2003

Before WILKINSON and MICHAEL, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

V. Peter Markuski, Jr., LAW OFFICES OF GOOZMAN, BERN-
STEIN & MARKUSKI, Laurel, Maryland, for Appellant. Thomas M.
DiBiagio, United States Attorney, Bryan E. Foreman, Assistant
United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Nnamdi Okolo appeals from the eighty-seven-month sentence imposed by the district court following his convictions for one count of bank fraud in violation of 18 U.S.C. § 1344 (2000), and three counts of making false statements on loan applications in violation of 18 U.S.C.A. § 1014 (West Supp. 2003). He contends that the sentencing court erred in increasing his offense level by ten based on its determination of the amount of loss and erred in enhancing his sentence based on a finding that he used sophisticated means in the commission of the offense. Upon consideration of the issues and arguments raised, we vacate Okolo's sentence and remand for resentencing.

The evidence showed that Okolo, his wife, and Grace Obebe started a luxury car rental business. They purchased ten vehicles in the name of Grace Obebe or Sonya Worthy-Okolo. Each of the loan applications used to obtain financing for the vehicles contained false information about the purchaser's salary from the car rental business. Evidence was presented that Okolo negotiated the purchase prices for the vehicles and directed his wife in the day-to-day operations of the business. Okolo completed the salary information on one of the credit applications submitted by his wife for the purchase of a vehicle.

In sentencing Okolo, the district court determined that the amount of loss attributable to the offenses was $645,297.45, the total of the full loan amounts for the ten vehicles. Okolo argues that the district court erred in determining the amount of loss without deducting an amount for the value of the vehicle which secured the loans. We agree and therefore vacate Okolo's sentence.

The Sentencing Guidelines provide for a base offense level of six for crimes involving fraud or deceit and then set forth a schedule for

incrementally increasing the offense level according to the amount of loss suffered as a result of the fraud. *U.S. Sentencing Guidelines Manual* § 2F1.1 (1998). "Loss" under § 2F1.1(b)(1) is the actual, probable, or intended loss to the victim. *See United States v. Parsons*, 109 F.3d 1002, 1004 (4th Cir. 1997). Courts are permitted to use the intended loss to the victim if that amount is greater than the actual loss. USSG § 2F1.1, comment. (n.8).

Application Note 8(b) states, "if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." USSG § 2F1.1, comment. (n.8(b)). Here, because there was no evidence that Okolo attempted to conceal or hide the collateral, the banks could reasonably expect to recover the value of the vehicles securing the loans. *See id.* We therefore find that the value of the vehicles should have been deducted from the unpaid balances of the loans to determine the amount of the loss. *Id.*; *see United States v. Baum*, 974 F.2d 496, 498 (4th Cir. 1992) (reversing district court's determination that amount of loss was equal to face amount of fraudulently obtained loan and requiring that "value of the security interest should be deducted from the amount of the loan in determining 'loss'" and payments on loans "should also be considered"); *see also United States v. Williams*, 292 F.3d 681, 686 (10th Cir. 2002) (upholding use of full amount of car loan as intended loss where defendant attempted to conceal the vehicle, but reversing use of full value of loan for tools where "there is no evidence that Mr. Williams intended to conceal the tools"); *United States v. Nichols*, 229 F.3d 975, 979 (10th Cir. 2000) (finding determination of loss as full amount of loan "clearly erroneous" where loan secured by collateral and there was no evidence "that the Defendant intended to permanently deprive the creditor of the collateral through concealment").

The district court found that there was concealment and referred to the concealment of the fact that the salary information on the credit applications was false. The district court also found that Okolo's fraudulent representations resulted in "the impairment of the [lenders'] security interest."

However, it is the concealment or destruction of the collateral which would impair the lender's security interest, and thus allow the court to use the face amount of the loan to determine loss. The concealment relied upon by the district court is concealment of the offense itself, not of the collateral.

Moreover, the district court's conclusion that the lenders' security interests were impaired is not supported by the record. Rather, the evidence shows that the vehicles were not damaged and they were openly displayed at the business' rental car lot. Additionally, as the probation officer noted in the presentence report, all of the vehicles were returned to the lenders, and there was no actual loss. Contrary to the sentencing court's conclusion, the security interests were not impaired. Therefore, we find that the value of the collateral should have been deducted from the loan balances to determine loss to the lenders. *See* USSG § 2F1.1, comment. (n.8(b)); *Baum*, 974 F.2d at 498.

Okolo also challenges the district court's imposition of a two-level enhancement based on its determination that he used sophisticated means in the commission of the offenses. USSG § 2F1.1(b)(6)(C). The court based its ruling on the pay stub submitted to National City Bank along with a credit application. The false pay stub bore the logo of ADP and was formatted in the same manner as those generated by ADP. Further, a representative for ADP testified at Okolo's trial as to the similarity between that pay stub and ones generated by ADP. She also testified that the pay stub submitted to National City Bank contained information that did not originate from ADP's computer payroll system. The false pay stub also listed amounts purportedly withheld for taxes and for dental and vision insurance, and reflected year-to-date amounts for earnings and withholdings.

Arguing in favor of the enhancement, the government asserted that Okolo did not merely make a false pay stub or type over a pay stub. Rather, in order to have the ADP logo on the document and to have some actual ADP codes, Okolo apparently scanned a pay stub into the computer, reformatted it, changed the amounts for salary, deductions, and withholdings, and then printed it. The government asserts that Okolo "had to go through the painstaking attempt to figure out" the income tax deductions for inclusion on the false pay stub, and com-

puting the year-to-date amounts as of May 31, 2000, for income taxes withheld, as well as dental and vision plan payments.

Okolo contends that there was nothing unusual, complex, or intricate about the documents used to obtain the loans; rather, he asserts that the documents submitted were typical for the offense charged. Okolo asserts that there was only one pay stub submitted, and that the pay stub contradicts an employment verification letter that was submitted with the same loan application. Okolo contends that this lack of attention to detail cuts against a finding of sophistication.

Resolving the issue, the court found that the enhancement should apply. The court reasoned: "the defendant not only caused to be submitted false documents, false representations, but he provided back-up documentation by way of the pay stubs and the symbols and codes that bore the ADP symbol. That is sophistication." This is a factual determination that will be reversed only upon clear error. *United States v. Rothberg*, 954 F.2d 217, 219 (4th Cir. 1992); *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir. 1989). We find that the district court's conclusion is supported by the record, and thus application of the two-level increase for sophisticated means does not amount to clear error. *See Daughtrey*, 874 F.2d at 217; *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (stating that court can overturn for clear error only if, "on the entire evidence," the court is "left with the definite and firm conviction that a mistake has been committed").

Accordingly, we affirm the district court's enhancement based on the use of sophisticated means, but vacate Okolo's sentence and remand for resentencing upon further consideration of the amount of the loss. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*VACATED AND REMANDED*