[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13077
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60064-RWG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN BRENNAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 11, 2014)


Before TJOFLAT, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Kevin Brennan appeals his 75-month total sentence imposed after a jury convicted him on one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and two counts of securities fraud, in violation of 18 U.S.C. § 1348. He does not challenge his convictions, but raises two claims with respect to his total sentence: (1) the district court clearly erred in imposing a 14-level increase under U.S.S.G. § 2B1.1(b)(1)(H), based on an attributable loss amount of between $400,000 and $1,000,000; and (2) the court also clearly erred in imposing a two-level increase under § 2B1.1(b)(10)(C), for use of sophisticated means during the commission of the underlying offenses. We conclude both of the arguments Brennan raises on appeal fail, and we therefore affirm his sentence.

## I. LOSS AMOUNT

Section 2B1.1 of the Guidelines provides for a 14-level increase for a fraud offense involving between $400,000 and $1,000,000 in losses. U.S.S.G. § 2B1.1(b)(1)(H). Application notes clarify the "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.*, comment. (n.3(A)(i)). "Intended loss," on the other hand, means "the pecuniary harm that was intended to result from the offense," including pecuniary harm "that would have been impossible or unlikely to occur." *Id.*, comment. (n.3(A)(ii)). In the context of fraud offenses, we have recognized that sentencing based on

2

intended loss is appropriate even where no actual loss occurred. *See United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993).

The district court did not clearly err in determining the intended loss amount was $500,000. *See United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011) (reviewing the district court's determination of loss amount for clear error). Brennan himself testified at trial that, after being presented with the fraud scheme, he agreed to participate and wished to sell $500,000 of Optimized Transportation Management stock over the course of five weeks. Moreover, a codefendant and a confidential informant, both of whom spoke with Brennan throughout the course of the conspiracy, each corroborated Brennan's admission by testifying the scheme was designed to raise half a million dollars. The district court was entitled to rely on the trial testimony in determining the loss amount. *See United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011) (explaining a district court may base its loss amount determination on factual findings derived from, among other things, evidence heard during trial). Thus, the district court did not clearly err in imposing a 14-level increase under U.S.S.G. § 2B1.1(b)(1)(H), based on an attributable loss amount of between $400,000 and $1,000,000.[1]

---

[1] Additionally, because intended rather than actual loss caused by the underlying offense is the appropriate measure in this case, as Brennan concedes, the court did not err by omitting an actual loss calculation under § 2B1.1, comment. (n.3(F)(ix)).

## II.  SOPHISTICATED MEANS

Section 2B1.1(b)(9)(C) of the Guidelines prescribes a two-level enhancement where the offense involves sophisticated means.  U.S.S.G. § 2B1.1(b)(9)(C).  "Sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and includes "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts."  *Id.* § 2B1.1, comment. (n.9(B)).  In evaluating whether a defendant qualifies for the enhancement, the proper focus is on the offense conduct as a whole, not on each individual step.  *See Barrington*, 648 F.3d at 1199 ("Each action by a defendant need not be sophisticated in order to support this enhancement.").

The district court did not clearly err in imposing the two-level increase for use of sophisticated means.  *See United States v. Ghertler,* 605 F.3d 1256, 1267 (11th Cir. 2010) (reviewing a district court's findings of fact related to the imposition of a sophisticated means enhancement for clear error).  Testimony at trial showed Brennan did not simply follow orders, as he contends, but instead directed a codefendant to issue kickback shares and forwarded a timed press release for publication.  Moreover, while Brennan evidently did not personally participate in match trading as part of the scheme, his codefendant, who was

4

responsible for the match trading portion of the scheme, testified he informed Brennan of the practice.

In any case, Brennan has not contested his convictions for the fraud offenses, and the Guidelines prescribe the "sophisticated means" adjustment based on the offense conduct as a whole, not simply the defendant's own personal conduct in perpetrating the offense. *See Barrington*, 648 F.3d at 1199. The district court did not clearly err in concluding that the methods used by the conspirators to attempt to execute the fraud scheme—such as the timed press release, the issuance of kickback shares to a third-party, and match trading—were sophisticated enough to warrant the increase under § 2B1.1(b)(10)(C). The timed press release and the designation of the kickback shares, like the methods employed in similar cases in which we have affirmed the imposition of a sophisticated means enhancement, relied on deception and third-party non-participants to conceal the underlying criminal activity. *See Ghertler,* 605 F.3d at 1268 (affirming the district court's imposition of a sophisticated means enhancement where the fraudulent scheme involved, among other things, forging company documents and transferring funds to unwitting third parties); *United States v. Campbell*, 491 F.3d 1306, 1315-16 (11th Cir. 2007) (holding a sophisticated means enhancement was appropriate because the defendant used campaign accounts and credit cards issued to other people to conceal cash expenditures and cover his tax fraud). Thus, the district

court did not clearly err in imposing a two-level increase under § 2B1.1(b)(10)(C),

for use of sophisticated means during the commission of the underlying offenses

**AFFIRMED.**